UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:14-CR-00062 RLM |
| | ) | |
| THOMAS M. REA | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

On March 10, 2016, the Defendant, Thomas M. Rea, by counsel, filed a Motion to Dismiss and Memorandum in Support. [Doc. Nos. 59 & 60]. On March 23, 2016, the United States filed its Response to the Defendant's Motion to Dismiss. [Doc. No. 63]. And on March 15, 2016, the Honorable Robert L. Miller, Jr. referred the Defendant's Motion to Dismiss to the undersigned to issue a Report and Recommendation on the appropriate disposition of the Defendant's motion. [Doc. No. 61]. For the reasons that follow the undersigned now **RECOMMENDS** that the Defendant's Motion to Dismiss be **GRANTED**.

## I. PROCEDURAL BACKGROUND

On April 10, 2014, the Defendant was charged by way of a complaint,[1] for using a telephone to threaten the damage or destruction of a building by means of an explosive in violation of 18 U.S.C. § 844(e). Specifically, it was alleged that the Defendant made threatening calls to a local television station in which he threatened to "bunker bomb" the federal building in downtown South Bend. As the affidavit in support of a criminal complaint reveals the Defendant had been charged in 1997 with making a threat against former Presidents in violation of 18 U.S.C. § 879. The affidavit also indicated that the Defendant's mother informed the

---

[1]The Defendant was subsequently indicted on June 11, 2014, for the same offense.

affiant that Rea had been diagnosed as a paranoid schizophrenic and she believed her son was "off his medication" for the past several months. She also told federal agents that Rea scares her and that she has caught him making phone calls late at night yelling at people.

In light of the Defendant's history and aware of his mother's concerns, the United States moved for a competency exam at the Defendant's initial court appearance following his arrest on April 10, 2014. [Doc. No. 4]. After appointing counsel for the Defendant, the Court continued the detention hearing and government's motion for a competency examination to April 15, 2014. On that date, the Court, without objection, granted the motion for a competency exam and remanded the Defendant to the United States Marshal for transportation to Butner, North Carolina to the Federal Medical Center for the purposes of determining the competency of the Defendant.

On June 18, 2014, the Court received the report of the forensic psychologist who opined that the Defendant was presenting symptoms consistent with schizophrenia, and as a result, was unable to understand the nature and consequences of the court proceedings against him or assist in his defense. The psychologist also believed that Rea may be restored to competency if he received treatment and medication. As voluntary treatment was not successful, the Federal Medical Center requested and the Court ordered the involuntary treatment of the Defendant on February 9, 2015. The treatment was extended upon the request of the Warden of the Federal Medical Center on July 9, 2015.

On October 5, 2015, another psychological report was received from the Federal Medical Center in which the forensic psychologist informed the Court that the Defendant "continued to present with active symptoms of psychosis, specifically persecutory delusions, which significantly interfere with his rational understanding of the [criminal] proceedings and his ability to assist his attorney planning a defense strategy." In short, the report concluded that

despite involuntary medication, Rea continues to lack competency to stand trial on the changes he faces. Additionally the forensic psychologist opined further that "there is not a substantial probability that the Mr. Rea's competency to stand trial can be restored in the foreseeable future."

Neither the Defendant nor the United States challenged the psychologists' opinions or conclusions. On November 12, 2015, the Court, without objection, found the Defendant incompetent and not restorable and then ordered further evaluation pursuant to 18 U.S.C. § 4246 concerning the Defendant's risk of dangerousness.

On January 7, 2016, the Court received a report in which the forensic psychologist opined that the Defendant would not pose a substantial risk of injury or damage to property if released unconditionally.

Having found the Defendant to be incompetent to stand trial and now presented with an opinion that he does not pose a danger if released unconditionally, the Court issued an order on February 10, 2016, requiring the parties to file briefs on how best to proceed. The United States filed its Brief on March 10, 2016. On the same day, the Defendant filed the instant Motion to Dismiss Indictment.

The United States, though not disputing any of the opinions or conclusions of the several psychologists that found the Defendant incompetent to stand trial and not dangerous, argued that the Court could continue the Defendant's detention for a "reasonable period" or the Court could release the Defendant with conditions. The Defendant simply argued that the Indictment should be dismissed.[2]

---

[2]It is unknown why the United States did not file its own motion to dismiss the indictment after concluding that the Defendant's incompetency made continued prosecution legally impossible.

While no one argued that the criminal prosecution could proceed or that the Defendant could be kept in custody indefinitely, it was unclear how to fashion appropriate conditions of release particularly if the likely end result would be the dismissal of the Indictment. To assist the Court and the Defendant in accessing available and appropriate psychological treatment in the community, the Court appointed Professor Michael J. Jenuwine of the University of Notre Dame Law School as the Defendant's Guardian Ad Litem.

On May 9, 2016, as a result of the efforts of the Defendant's criminal defense attorney, his Guardian Ad Litem, his family members and the United States Probation Officer, the Court was able to order the release of the Defendant, with conditions and without any objections. Specifically, the Court ordered the release of the Defendant and imposed two conditions of release: (1) the Defendant shall submit to medical, mental and psychological evaluation and treatment as required by representatives of Oaklawn and (2) that the Defendant institute guardianship proceedings in state court. The Court also ordered the Defendant's Guardian Ad Litem to file a report indicating when the two conditions have been fulfilled.

In a status report filed May 27, 2016, the Defendant's Guardian Ad Litem indicates that the Defendant is now in a group home receiving psychological treatment, has been fully compliant with his medications and has been "doing quite well." [Doc. No. 75]. In addition, the Guardian reports that the Defendant's sister has filed a Petition for Guardianship of the Defendant in the St. Joseph County Probate Court.

The remaining issue before the Court is the pending Motion to Dismiss Indictment.

**II.    ANALYSIS**

The law has been clear for some time that "a criminal defendant may not be tried unless he is competent." *Pate v. Robinson,* 383 U.S. 375, 378, (1966). Nor can he waive his right to counsel or plead guilty unless he does so "competently and intelligently," *Johnson v. Zerbst,* 304

U.S. 458, 468, (1938); *accord Brady v. United States*, 397 U.S. 742, 758, (1970) see *Godinez v. Moran,* 509 U.S. 389 (1993) (holding that the standard of competency for pleading guilty or waiving right to counsel is the same as the competency standard for standing trial). It is also clear, and the United States does not argue otherwise, that the Defendant is neither competent to stand trial nor likely to be restored to competency with treatment, even if administered involuntarily. As one forensic psychologist opined ". . . there is not a substantial probability that Mr. Rea's competency to stand trial can be restored in the foreseeable future." Doc. No. 41 at 8.

Nevertheless, the Defendant could continue to be held in custody despite not being competent to stand trial, if the United States initiates civil commitment proceedings against the Defendant pursuant to 18 U.S.C. § 4246 and the Court concludes that the Defendant would pose a danger to the community if released. Yet, as the United States notes, the director of the medical facility where Mr. Rea was treated has not certified that Mr. Rea's release would create a substantial risk of bodily injury to another person or serious damage to property of another. *See* 18 U.S.C. § 4246(a). Therefore, further civil proceedings for commitment of dangerous individuals under § 4246 do not appear authorized by statute. *See* Doc No. 58 at 4. In short, because the Defendant is not competent and is not considered dangerous, neither criminal prosecution or involuntary civil commitment under 18 U.S.C. § 4246(a) are viable options for the United States to pursue.

Faced with a Defendant who is not competent to stand trial, or plead guilty, whose competency can not be likely restored, and who poses no danger to the community and therefore can not be civilly committed, there simply is no other option for this Court than to **DISMISS** the indictment now pending.

As a result, the undersigned now **RECOMMENDS** that the Indictment be **DISMISSED** as the Defendant is **NOT COMPETENT**, will not likely be restored to competency, and further

poses no danger to the community if released. Should the Court accept and adopt this Report and Recommendation upon the dismissal of the indictment, the appointment of the Guardian Ad Litem shall terminate as well as the conditions of release previously imposed.

**NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED.**

Dated this 3rd day of June, 2016.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge